## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**IN RE: CANADIAN IMPORT
ANTITRUST LITIGATION**

Civil No. 04-2724 (JNE/JGL)

This Document Relates to: All Actions

**REPORT AND
RECOMMENDATION**

---

### APPEARANCES

William R. Kane, Esq., spoke on behalf of Plaintiffs.

Daniel E. Gustafson,  Nyran Rose Pearson, and Karla M. Gluek, Esqs.,
appeared on behalf of Plaintiffs.

George S. Cary, Esq. (counsel for Defendant GlaxoSmithKline) and Robert
Reznick, Esq. (counsel for Merck & Company, Inc.) spoke on behalf of all
served Defendants.

Peter J. Kadzik, Maria Colsey Heard, Gary J. Haugen, and Michael C.
McCarthy, Esqs., appeared on behalf of Defendant Pfizer, Inc.

Sara D. Schotland and Michael A. Lindsay, Esqs., appeared on behalf of
Defendant GlaxoSmithKline, PLC.

Stuart N. Senator, Esq., appeared on behalf of Defendant Abbott Laboratories,
Inc.

David P. Graham, Gary M. Hansen, and David Ceryak, Esqs., appeared on
behalf of Defendant Eli Lilly & Company.

Lewis A. Remele, Jr., Esq., appeared on behalf of Defendant Merck &
Company, Inc.

Grant J. Esposito, James A. O'Neal and John F. Beukema, Esqs., appeared on
behalf of Defendant Novartis AG.

Anne P. Davis, Douglas L. Wald, and Mark A. Jacobson, Esqs., appeared on behalf of Defendant Wyeth Pharmaceuticals, Inc.

John A. Cotter, Esq, appeared on behalf of Defendant AstraZeneca, PLC.

_____

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came before the undersigned Chief Magistrate Judge of District Court on January 13, 2005 on Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint (Doc. No. 98).  The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

## I.    BACKGROUND

Plaintiffs are consumers and organizations from Minnesota and other states who have purchased or paid for brand name prescription drugs. Defendants are pharmaceutical companies who manufacture and market brand name prescription drugs.  Plaintiffs have filed their claims on behalf of themselves and a class defined as "[A]ll persons or entities in the United States and its territories  who purchased or paid for brand name prescription drugs manufactured or marketed" by Defendants.  Consolidated Complaint at ¶ 69.

Plaintiffs allege that Defendants have engaged in a concerted course of conduct designed to prevent prescription drugs purchased from

Canadian pharmacies from entering the United States.  According to the

Consolidated Complaint, brand name prescription drugs cost 20% to 80% less

in Canada than they cost in the United States, and Defendants have illegally

conspired to prevent Americans from purchasing the drugs at the lower

Canadian prices.  Plaintiffs assert that, by doing so, Defendants have created

and perpetuated a supra-competitive pricing structure for their medications in

the United States.  <u>See</u> Consolidated Complaint at ¶ 26.  Plaintiffs plead that

Defendants' actions are in violation of the Sherman Act (Count I) and restraint

of trade statutes in at least 24 states (Count II), and that Defendants have

been unjustly enriched (Count III) as a result of their inequitable conduct.

Defendants move to dismiss Plaintiffs' Consolidated Complaint on

the grounds that federal antitrust laws do not protect Plaintiffs' abilities to

purchase prescription drugs from Canada.  Defendants further ask this Court

to dismiss Plaintiffs' state law and equitable claims on the grounds that they

are preempted by federal law and cannot provide a remedy for injury to

unlawful trade.

**II.    ANALYSIS**

A complaint should not be dismissed unless it appears beyond

doubt that the plaintiffs can prove no set of facts in support of its claim that

would entitle them to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

Thus, a plaintiff must show that the prima facie elements of the applicable

claims are asserted in the complaint.  <u>Hungate v. United States</u>, 626 F.2d 60,

62 (8th Cir. 1980) (citing <u>United States v. Employing Plasterers Ass'n</u>, 347 U.S.

186, 189 (1954)).  When considering a motion to dismiss, the court must treat

all facts alleged in the claim as true and must liberally construe the

allegations in the claim and the reasonable inferences arising therefrom in

favor of the non-moving party, but give no effect to conclusory allegations of

law.  <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994) (citations omitted);

<u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 698 (8th Cir. 2003) (citations

omitted).  The Court may grant dismissal on the basis of a dispositive issue of

law, and may dismiss a claim founded on a legal theory that is "close but

ultimately unavailing."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989).

       In reviewing the Consolidated Complaint and applicable law in

this Motion to Dismiss, this Court will first address the question of whether

Plaintiffs have standing to sue under the federal antitrust laws.  The Court will

then analyze whether Plaintiffs' state and equitable claims are preempted by

federal law and whether Plaintiffs have adequately pled their equitable claim.

**A.** **Whether Plaintiffs Have Standing to Assert Federal Antitrust Claims**

Plaintiffs allege that Defendants engaged in a continuing agreement, combination or conspiracy in unreasonable restraint of trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1.  In this Count I, Plaintiffs seek injunctive relief, pleading that Defendants' actions compelled Class members to purchase Defendants' brand name prescription drugs at artificially inflated prices, resulting in damages and the threat of additional damage.  Consolidated Complaint at ¶¶ 81-89.

Section 16 of the Clayton Act allows private entities to "sue for and have injunctive relief…against threatened loss or damage by a violation of the antitrust laws…." 15 U.S.C. § 26.  The United States Supreme Court has directed that, to have standing to seek injunctive relief under the Clayton Act, a private plaintiff must allege an "antitrust injury." Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 113 (1986).  "Antitrust injury" is defined by the Court as injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Id. (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)).  The mere fact that an antitrust violation has occurred and is causally related to a

plaintiff's harm is insufficient to establish antitrust injury.  McDonald v.

Johnson & Johnson, 722 F.2d 1370, 1374 (8th Cir. 1983), cert. denied, 469

U.S. 870 (1984).  Citing Brunswick, the Eighth Circuit has repeatedly stated

that a "mere causal connection between an antitrust violation and harm to a

plaintiff cannot be the basis for antitrust compensation unless the injury is

directly related to the harm the antitrust laws were designed to protect."  State

of South Dakota v. Kansas City Southern Industries, 880 F.2d 40, 46 (8th Cir.

1989), cert. denied, 493 U.S. 1023 (1990)(quoting McDonald, 722 F.2d at

1374).

        Various courts have found that "an action under the antitrust laws

will not lie where the business conducted by the plaintiff, and alleged to have

been restrained by the defendant, was itself unlawful."  Modesto Irrigation

Dist. v. Pacific Gas and Elec. Co., 309 F. Supp.2d 1156, 1169-70 (N.D. Cal.

2004) (internal quotations omitted).  The Modesto court reasoned that a "party

cannot prove a cognizable antitrust injury when it itself engaged in unlawful

conduct *ex ante*."  309 F. Supp. at 1170.  See also American Bankers Club,

Inc. v. American Express Co., 1977 WL 1349 (D.D.C. 1977) ("Courts have

refused to entertain claims under the antitrust laws where those claims were

based on plans which violate the law....")  The Fifth Circuit has similarly

presumed that antitrust injury can be established only if the relevant market

6

pled is a legal market.  <u>Access Telecom, Inc. v. MCI Telecommunications Corp.</u>,

197 F.3d 694, 712-13 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 917 (2000) ("If

there is no legal U.S. export market to Mexico and the only U.S. export market

affected is the Mexican market, then there is no antitrust injury.")

Plaintiffs have proffered a number of cases in which courts have

rejected defendants' arguments that their anticompetitive actions were

justified because they were trying to prevent other illegalities.   <u>See</u>, <u>e.g.</u>,

<u>Sugar Institute, Inc. v. United States</u>, 297 U.S. 553, 599 (1936); <u>Federal Trade</u>

<u>Commission v. Indiana Fed'n of Dentists</u>, 476 U.S. 447, 465 (1986); <u>Fashion</u>

<u>Originators' Guild of America v. Federal Trade Commission</u>, 312 U.S. 457, 467-

68 (1941); <u>U.S. v. Glaxo Group Ltd.</u>, 302 F. Supp. 1, 9 (D.D.C. 1969), <u>rev'd on</u>

<u>other grounds</u>, 410 U.S. 52 (1973); <u>American Medical Assoc. v. United States</u>,

130 F.2d 233, 248 (D.C. Cir. 1942).   In one such case, the defendant drug

manufacturer restricted a distributor from reselling its bulk-form product

without the drug company's permission, arguing that this restrictive

agreement was necessary to ensure uniform standards of health and safety in

the preparation of a final product.   <u>United States v. Glaxo Group Ltd.</u>, 302 F.

Supp. at  9.  The district court rejected the defendant's defense, finding that

"[h]owever laudable the motive," the agreement was a *per se* violation of the

Sherman Act.  <u>Id.</u>  The United States Supreme Court has made clear that the

fact "[t]hat a particular practice may be unlawful is not, in itself, a sufficient justification for collusion among competitors to prevent it." <u>Federal Trade Commission v. Indiana Fed'n of Dentists</u>, 476 U.S. at 465.  As the Court noted in <u>Sugar Institute</u>, "[t]he endeavor to put a stop to illicit practices must not itself become illicit."  297 U.S. at 599.  However, none of these cases involved a private plaintiff with standing to challenge the anticompetitive conduct.  <u>See</u>, <u>e.g.</u>, <u>Sugar Institute, Inc. v. United States</u>, 297 U.S. 553; <u>Federal Trade Commission v. Indiana Fed'n of Dentists</u>, 476 U.S. 447; <u>Fashion Originators' Guild of America v. Federal Trade Commission</u>, 312 U.S. 457; <u>United States v. Glaxo Group Ltd.</u>, 302 F. Supp. 1; <u>American Medical Assoc. v. United States</u>, 130 F.2d 233.  Each of these cases involved a governmental entity that did not have to prove antitrust injury under § 4 of the Clayton Act.  <u>See id.</u>

    In the present case, this Court finds that, if the importation of prescription drugs from Canada for personal use is unlawful, Plaintiffs will not have standing to challenge Defendants' allegedly anticompetitive conduct under federal law.  While the law is clear that Defendants may not be immune from antitrust liability simply because they claim their actions are designed to preserve the health and safety of the American drug-buying public, the law is also clear that a private plaintiff suing under federal antitrust laws must show more than a causal link between its injury and a defendant's anticompetitive

8

actions.  Under <u>Brunswick</u> and its progeny, Plaintiffs must also show that their injury is of the kind the federal antitrust laws were designed to prevent. The Court can find no persuasive authority to suggest that federal antitrust laws were designed to protect a private plaintiff's right to violate law.  As such, this Court finds that the question of Plaintiffs' standing to sue hinges on whether their underlying enterprise - the purchase of drugs from Canada - is lawful.

> **1.     Whether Purchases of Prescription Drugs in Canada for Use in the United States are Legal**

Defendants contend that all purchases of prescription drugs in Canada for use in the United States are *per se* illegal.  Defendants rely on numerous public documents, including FDA warning letters and congressional reports, to show that the FDA and others believe that importation of Canadian drugs is unlawful. In contrast, Plaintiffs argue that nothing in the law itself precludes purchases of drugs from Canada by a consumer for personal use.  Plaintiffs urge the Court to look at the "plain language" of the federal drug laws in question and contend that, at the very least, questions of fact preclude dismissal of their Consolidated Complaint.

Congress enacts laws regarding the manufacture, distribution, and use of drugs in the United States. While there is an abundance of legal

code devoted to drug regulation, surprisingly, there appears to be no statute or regulation which squarely addresses the question here – is it illegal to purchase Canadian prescription drugs for use in the United States? In the massive body of law that surrounds the regulation of drugs, the parties' arguments center around two as being the most applicable: 21 U.S.C. §381(d)(1) ("Prescription Drug Marketing Act") and 21 U.S.C. § 331(a) (The Federal Food, Drug and Cosmetic Act "FFDCA").

### a.      *Prescription Drug Marketing Act*

The Prescription Drug Marketing Act bars the re-importation of drugs made in the United States and generally states "no drug subject to §353(b) of this title or composed wholly or partly of insulin which is manufactured in a State and exported may be imported into the United States unless the drug is imported by the manufacturer of the drug." 21 U.S.C. § 381(d)(1). Plaintiffs concede that the Prescription Drug Marketing Act bars the re-importation of drugs originally made in the United States by entities other than the manufacturer.  Plaintiffs instead argue that the Prescription Drug Marketing Act does not mention or bar importation of drugs originally manufactured outside the United States. Plaintiffs believe that most of the prescription drugs involved in this litigation are manufactured outside of the United States.

This Court agrees that 21 U.S.C. § 381(d)(1) does not appear to address the importation into the United States of drugs which were manufactured outside the United States. As the parties concede that the reimportation of drugs originally manufactured in the United States is illegal, the remainder of this Court's analysis regarding the legality of importation of drugs from Canada relates solely to drugs originally manufactured outside the United States.

### b.   *Federal Food Drug and Cosmetic Act*

In relevant part, the Federal Food Drug and Cosmetic Act ("FFDCA") prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."  21 U.S.C. § 331(a). Under the FFDCA, "interstate commerce" is defined to include "commerce between any State or Territory and any place outside thereof." 21 U.S.C.§ 321(b)(1).

Defendants urge the Court to find that all drug purchases from Canada for use in the United States are illegal under the FFDCA.  Plaintiffs, on the other hand, argue that the purchase of drugs in Canada for personal use in the United States is not barred by the plain language of the FFDCA.  In analyzing the statute, it is first necessary to review whether Canadian drugs are necessarily "adulterated" or "misbranded" under the FFDCA.  Next, the

11

Court will interpret "introduction into interstate commerce" in light of existing case law.

### 1) *Whether drugs purchased in Canada are "misbranded" under 21 U.S.C. § 331 (a)*

The FFDCA describes, in various sections, what drugs are "adulterated" or "misbranded." Drugs are considered misbranded under a variety of circumstances, including lacking information required by statute, if they are labeled in a language other than English (21 C.F.R. § 201.15(c)) or are dispensed without a valid prescription (21 U.S.C. § 353(b)(1)). Plaintiffs acknowledge that prescription drugs approved for sale in Canada would be "technically 'misbranded' due to minor labeling differences, such as the use of a Canadian drug identification number CDIN, or 'DIN,' rather an American National Drug Code, or 'NDC,'… and because their labels include information in French as well as English."  Plaintiffs' Memorandum at page 27.  Plaintiffs nevertheless emphasize that such misbranding involves mere technicalities and do not make the medication in any way unsafe.

This Court agrees with Plaintiffs that the apparent "misbranding" of Canadian drugs under U.S. law appears to be a legal technicality as opposed to a substantive difference in the nature and quality in Canadian drugs. Nevertheless, whether the misbranding is a technical illegality or a

substantial one, the distinction is not recognized under either 21 U.S.C.

§331(a) or federal antitrust law.  Nothing in Plaintiffs' Consolidated Complaint

or subsequent submissions suggests that any Canadian drugs would not be

technically misbranded; indeed, Plaintiffs appear to concede that they are

misbranded and therefore may not be introduced into "interstate commerce"

in the United States.  As such, this Court is not at liberty to disregard the

plain language of the FFDCA which renders Canadian drugs "misbranded"

simply because of differences in Canadian labeling.[1]

> **2)**   ***Whether drugs purchased for personal use in Canada enter the stream of interstate commerce***

The Court must next analyze whether misbranded drugs

purchased in Canada for personal use are then introduced or delivered "for

introduction into interstate commerce" as prohibited under the FFDCA.  21

U.S.C. § 331(a). The FFDCA defines "interstate commerce" to include

"commerce between any State or Territory and any place outside thereof." 21

U.S.C.§ 321(b)(1).

---

[1]    Plaintiffs argue that most drugs imported from Canada are exempt from FDA labeling requirements because they have been dispensed by filling a prescription, under 21 U.S.C. § 353(b)(2). However, this statute still mandates that a drug dispensed by prescription "shall be deemed to be misbranded if at any time prior to dispensing the label of the drug fails to bear, at a minimum, the symbol 'Rx only.'"  21 U.S.C. § 353(b)(4)(A).  It is this Court's understanding that Canadian drugs do not bear the Rx symbol.

Defendants contend that, in enacting the FFDCA, Congress intended to extend the protection of consumers "to the full extent constitutionally possible." Defendants' Reply Memorandum at page 8, quoting H.R. Rep. No. 75-2139 (1937). As such, Defendants argue that any transportation of a drug into the United States, regardless of whether the transport is done by the ultimate consumer, is an "introduction into interstate commerce" within the scope of the FFDCA.  Plaintiffs respond that, when a consumer purchases a drug in Canada for personal use – not for resale – the commercial element of the transaction ended in Canada.  Accordingly, Plaintiffs argue that these drugs are not introduced into the stream of interstate commerce as defined by the FFDCA.

"[T]he Supreme Court has repeatedly said crossing state lines is interstate commerce regardless of whether any commercial activity is involved." U.S. v. Wright, 128 F.3d 1274, 1275 (8th Cir. 1997), cert. denied, 523 U.S. 1053 (1998)(citing Heart of Atlanta Motel, Inc. v. U.S., 379 U.S. 241, 255-56 (1964) and Edwards v. California, 314 U.S. 160, 172 & n. 1 (1941)).  In U.S. v. Wright, the Eighth Circuit rejected the reasoning of the district court which, in reviewing the Violence Against Women Act, determined that "an interstate movement does not necessarily involve… interstate commerce…." 128 F.3d at 1275 (internal citations omitted). The Eighth Circuit reversed the district

14

court, noting "[i]f crossing state lines for noncommercial purposes is not

interstate commerce, however, the validity of a number of statutes[2] besides

[the Violence Against Women Act] would be in doubt." Id.  The Eighth Circuit

concluded that its "own cases have also consistently made clear that crossing

state lines, without more, is interstate commerce." Id. at 1276 (citing U.S. v.

Robinson 62 F.3d 234, 235, 237 n.4 (8th Cir. 1995) (a vehicle which had

crossed state lines for the noncommercial purpose of transporting a family to a

funeral was transported in "interstate commerce" in carjacking)); Lupino v.

U.S., 268 F.2d 799, 801 (8th Cir. 1959), cert. denied, 361 U.S. 834 (1959)("the

crime of traveling in interstate commerce with intent to avoid prosecution is

complete when the offender crosses a state line with that noncommercial

intent.")

        Although this Court is intrigued by Plaintiffs' argument that

"drugs carried into the United States for personal use are not transported in

interstate commerce," the overwhelming weight of long-established authority

requires that this Court find otherwise.  Plaintiffs attempt to distinguish most

of the federal cases describing interstate commerce as being part of the broad,

---

[2]        Examples include laws prohibiting: interstate travel with intent to disrupt an animal
enterprise (18 U.S.C. § 43); interstate flight to avoid prosecution (18 U.S.C. § 1073); interstate travel
in aid of unlawful activity (18 U.S.C. § 1952); interstate travel with intent to incite a riot (18 U.S.C. §
2101); and interstate travel for the purpose of engaging in a sexual act with a minor (18 U.S.C.§ 2423
(b)). Id. at 1275.

Commerce Clause analysis used to determine the constitutionality of a statute; the FFDCA's constitutionality is not in question, so Plaintiffs urge a narrow interpretation of "interstate commerce" in the FFDCA.  Nevertheless, this Court can find no legal support for such a distinction, nor can Plaintiffs cite to a single case in which interstate commerce - in any context - has been so narrowly defined.  Indeed, the Eighth Circuit has made clear that no commercial activity is required for an item to have moved in interstate commerce.  Because the weight of controlling authority is contrary to the interpretation urged by Plaintiffs, this Court is compelled to find that the transport of drugs for personal use into the United States constitutes an "introduction into interstate commerce" under the FFDCA.

## 2.    Whether Fact Issues Preclude a Finding of Law

Both parties have urged the Court to find that the questions regarding the legality of drug importation can be determined as a matter of law.  Plaintiffs alternatively contend that the question of whether the drugs have been introduced into interstate commerce is a fact question for a jury to determine.  Plaintiffs cite various cases in which fact questions relating to whether or when an item moved in interstate commerce were reserved for a jury to determine. See, e.g., United States v. Nukida, 8 F.3d 665, 671 (9th Cir. 1993), cert. denied, 439 U.S. 1051 (1978)(in criminal case for tampering with

16

an I.V. bag, it was a question of fact as to whether bags were still "in commerce" when tampering occurred); <u>United States v. Tobin</u>, 576 F.2d 687, 692 (5th Cir. 1978) (question of fact as to whether stolen item was still in interstate commerce two years after theft); <u>United States v. Cyphers</u>, 604 F.2d 635, 636 (9th Cir. 1979) (question of fact as to whether stolen bonds were still in stream of interstate commerce after twenty-month interval); <u>United States v. Licavoli</u>, 604 F.2d 613, 624 (9th Cir. 1979), <u>cert. denied</u>, 446 U.S. 935 (1980)(question of fact as to whether criminal defendants were involved in the interstate transport of stolen items).

None of the cases cited by Plaintiffs support the finding of a fact question regarding when a Canadian drug is introduced into the stream of commerce. Plaintiffs' cited cases involve true questions of fact as to whether and/or when a party actually transported an item in interstate commerce. In the present case, there is no question that Plaintiffs seek to purchase drugs in Canada and then transport them to the United States. The Court sees no fact questions regarding interstate commerce which are appropriately reserved for a jury. Accordingly, the question of whether drug imports from Canada are permitted under the FFDCA is a question of law, appropriate for Court determination.

Based on the foregoing analysis, this Court finds that no

questions of fact preclude judgment as a matter of law that Plaintiffs do not

have standing to assert a cause of action under the Sherman Act.  The Court

recommends that Count I of Plaintiffs' Consolidated Complaint be dismissed.

**B.   Whether Plaintiffs' State Law and Equitable Claims are Preempted by Federal Law**

Defendants ask this Court to dismiss Plaintiffs' state law and

equitable claims on the grounds that they are preempted by state law.  "A

preemption question requires an examination of congressional intent."

Schneidewind v. ANR Pipeline Co. 485 U.S. 293, 299 (1988).  Congress may

expressly or implicitly indicate an intent to preempt state law.  Id. at 299-300.

In the absence of express preemption language, Congress may "impliedly

preempt a field of law where a scheme of regulation is 'so pervasive as to make

reasonable the inference that Congress left no room for the States to

supplement it.'"  Nordgren v. Burlington Northern Railroad Co., 101 F.3d

1246, 1248 (8th Cir. 1996) (quoting Fidelity Fed. Sav. & Loan Ass'n. v. De la

Cuesta, 458 U.S. 141 (1982)).  Otherwise, federal law may preempt state law

where a state statute conflicts with or frustrates federal law - where state law

"stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress." Id. citing Freightliner Corp. v. Myrick,

514 U.S. 280 (1995).

　　　In determining whether federal law preempts state law, the

United States Supreme Court has directed:

> When Congress legislates in a field traditionally occupied by the
> States,'we start with the assumption that the historic police
> powers of the States were not be superseded by the Federal Act
> unless that was the clear and manifest purpose of Congress.'

California v. ARC America Corp. 490 U.S. 93, 101 (1989)(quoting Rice v. Santa

Fe Elevator Corp., 331 U.S. 218, 230 (1947).  The Supreme Court has further

identified antitrust law as a field traditionally regulated by the states, noting

"[g]iven the long history of state common-law and statutory remedies against

monopolies and unfair business practices, it is plain that this is an area

traditionally regulated by the states."  Id.

　　　When faced with the opportunity to preempt state law with the

FFDCA, courts have repeatedly refused to do so.  See, e.g., Mazur v. Merck &

Co., 742 F. Supp. 239, 247 (E.D. Pa. 1990); Motus v. Pfizer, 127 F. Supp.2d

19085, 1092 (C.D. Cal. 2000); Hurley v. Lederle Laboratories, 863 F.2d 1173,

1176 n. 2 (5th Cir. 1988); Abbott by Abbott v. American Cyanamid Co., 844

F.2d 1108, 1112 n. 1 (4th Cir. 1988), cert. denied, 488 U.S. 908 (1988); In re

Cardizem CD Antitrust Litigation, 105 F. Supp.2d 618, 659 (E.D. Mich. 2000), aff'd, 332 F.3d 896 (6th Cir. 2003), cert. denied, 125 S.Ct. 307 (2004).

In the present case, this Court can find no Congressional intent to either expressly or impliedly preempt state antitrust and consumer fraud laws and equitable doctrines. As states have traditionally regulated their own trade and antitrust policies, this Court is particularly loathe to override states' rights to enact and enforce laws as they see fit, absent clear federal Congressional intent to do so. Nor is this Court persuaded that the doctrines of field preemption or conflict preemption operate to nullify Plaintiffs' state law claims. Numerous other courts have rejected arguments that the FFDCA is so pervasive that it preempts state law.

Defendants urge this Court to overlook case law which questions whether the FFDCA generally preempts state law and instead narrow its focus to the *particular* federal regulatory scheme at issue, i.e., drug importation. Specifically, Defendants argue that "Congress's regulation of pharmaceutical importation is so pervasive that it leaves no room for the states to supplement it, especially not with state antitrust laws that directly conflict with congressional goals." Defendants' Reply Memorandum at p. 21. Adopting Defendants' analysis, this Court finds that preemption is particularly inappropriate under these circumstances, where Congress has failed to state a

20

clear intention to ban Canadian imports.  Indeed, it appears that the

unlawfulness of Canadian imports could be an almost accidental - rather than

intended - result of statutory construction.  The fact that this Court's analysis

on Canadian importation required review of multiple statutory references and

ultimately relied on narrow passages regarding labeling technicalities is ample

evidence that Congress has not stated clear congressional goals sufficient to

preempt state law.

Defendants complain that Plaintiffs' state antitrust claims are

founded on the presumption that Canadian imports are legal, and that the

claims therefore necessarily conflict with the intent of the FFDCA.  Even if

Congress had passed a clear ban on Canadian imports, Defendants' analysis

surpasses the boundaries of federal preemption law, which should be used

only sparingly in order to preserve the police powers of the states.  Defendants

fail to identify a single state statute that directly conflicts with the FFDCA.

Under these circumstances, states may regulate their own trade, and

preemption is inappropriate.  As such, Defendants' Motion to Dismiss Count II

of Plaintiffs' Consolidated Complaint should be denied.

### C.    Whether Plaintiffs Have a Remedy Under Common Law

Defendants move to dismiss Plaintiffs' unjust enrichment count

on the grounds that common law does not provide a remedy for injury to

unlawful trade and because Plaintiffs would have an adequate remedy at law.

This Court has determined that, under the restrictive analysis of federal

antitrust standing law, Plaintiffs do not have a federal antitrust cause of action

because the purchase of Canadian drugs for use in the United States is

technically illegal. Although Defendants urge this Court to make a sweeping

finding that all equitable claims must be dismissed for the same reasons, this

Court finds that such a determination at this juncture would be inappropriate

under the liberal review standard for a motion to dismiss. Equitable claims

are traditionally reviewed under state law, and this Court has not been

provided a legal framework to universally strike Plaintiffs' claims under each

state law. Because Plaintiffs have adequately pled a claim for equitable relief

(including the averment that they have no adequate remedy at law), their

claim for equitable relief should not be struck. This Court recommends that

Defendants' motion be denied with respect to Count III of Plaintiffs'

Consolidated Complaint.


     Based upon the foregoing, and all the files, records, and

proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants'

Motion to Dismiss the Consolidated Complaint (Doc. No. 98) should be

**GRANTED IN PART** and **DENIED IN PART**, in that Count I of Plaintiffs'

Consolidated Complaint should be dismissed.


Dated: February 28, 2005

           s/ Jonathan Lebedoff

          JONATHAN LEBEDOFF

          Chief United States Magistrate Judge


Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties by March 17, 2005, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.