## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**IN RE: CANADIAN IMPORT
ANTITRUST LITIGATION**

Civil No. 04-2724 (JNE/JGL)

This Document Relates to: All Actions

**REPORT AND
RECOMMENDATION**

---

### APPEARANCES

William R. Kane, Esq. spoke, and Daniel E. Gustafson, Nyran Rose Pearson, and Karla M. Gluek, Esqs., appeared on behalf of Plaintiffs.

Grant J. Esposito, Esq. spoke, and James A. O'Neal appeared on behalf of Defendant Novartis AG.

Amelia T.R. Starr, Esq. spoke, and Daniel J. Schwartz and John A. Cotter, Esqs. appeared on behalf of Defendant AstraZeneca PLC.

Michael C. McCarthy, Esq. appeared on behalf of Defendant Pfizer, Inc.

Gary M. Hansen, Esq. appeared on behalf of Defendant Eli Lilly & Company.

Mark A. Jacobson, Esq. appeared on behalf of Defendant Wyeth Pharmaceuticals, Inc.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came before the undersigned Chief Magistrate Judge of District Court on January 18, 2005, on Defendant Novartis AG's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (Doc. No. 92) and Defendant AstraZeneca PLC's Motion to Dismiss for Lack of

Jurisdiction and Improper Venue (Doc. No. 99).  The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

## I.      BACKGROUND

Plaintiffs are consumers and organizations from Minnesota and other states who have purchased or paid for brand name prescription drugs. Defendants are pharmaceutical companies who manufacture and market brand name prescription drugs.  Plaintiffs have filed their claims on behalf of themselves and a class defined as "[A]ll persons or entities in the United States and its territories  who purchased or paid for brand name prescription drugs manufactured or marketed" by Defendants.  Consolidated Complaint ("Complaint") at ¶ 69.  For purposes of the Motion to Dismiss, the facts pled in the Complaint are presumed to be true.

### A.      General Allegations in the Complaint

Plaintiffs allege that "Defendants have engaged in a concerted course of conduct designed to prevent brand name prescription drugs purchased from Canadian pharmacies from entering the United States." Complaint at ¶ 26.  Defendants' brand name prescription drugs are not sold directly to consumers in the United States or in Canada.  Id., ¶ 28. Instead, the Defendants act through their American and Canadian subsidiaries to sell

prescription drugs to intermediaries like wholesalers, who resale the prescription drugs to the end consumers. Id.

Defendants, "directly and/or through their American and Canadian subsidiaries," are all members of American and Canadian pharmaceutical trade associations which hold regular meetings. Id., ¶ 39. According to the Complaint, these trade association memberships have given Defendants the opportunity to meet and "agree upon a course of concerted conduct designed to protect their supra-competitive profits by suppressing the resulting competition." Id.  The Complaint further alleges that, via Defendants' conspiracy, the Defendants' Canadian subsidiaries threatened and implemented supply controls, limiting the quantity of their brand name prescription drugs available to Canadian pharmacies that sold to American consumers. Id., ¶ 42.

Plaintiffs contend that Defendants' unlawful conduct has forced American consumers to fill their prescriptions in the United States, depriving them of the option of purchasing brand name prescription drugs from Canadian pharmacies at lower Canadian prices and creating a supra-competitive pricing structure in the United States. See id., ¶ 65.

**B.** **Complaint's Allegations specific to Defendant AstraZeneca PLC**

The Complaint asserts that AstraZeneca PLC, through its

Canadian subsidiary, AstraZeneca Canada, Inc., closely monitored sales to its customers and initiated an allotment program, in order to limit supply of pharmaceutical drugs available to American consumers. Id., ¶ 52.  Through AstraZeneca Canada, AstraZeneca PLC also sent a letter to its customers, requiring them to sign a form certifying their compliance with its terms and conditions. Id., ¶ 56. AstraZeneca PLC, through AstraZeneca Canada, prohibited wholesalers from selling its products to pharmacies that it believed to be advertising to people in the United States. Id., ¶ 62.

**C.    Complaint's Allegations Specific to Defendant Novartis AG**

The Complaint describes Defendant Novartis AG as a "global pharmaceutical company with its corporate headquarters in Basel, Switzerland, and its United States headquarters located in East Hanover, New Jersey." Id., ¶ 23. At least one of Novartis AG's American subsidiaries, Novartis Pharmaceuticals Corporation, is a member of the American pharmaceutical trade association, and at least one of its Canadian subsidiaries is a member of the Canadian pharmaceutical trade association. Id., ¶ 23. Through its Canadian subsidiary, Novartis AG issued a letter to its customers, reminding them that they were not to sell product for resale to any third party who would be suspected of exporting the product from Canada. Id., ¶ 57. Novartis AG reserved the right to restrict quantities and amounts eligible for purchase by

wholesalers that sold product to pharmacies they knew or should have known would sell the Novartis AG products to consumers in the United States. Id.

### D.   **Complaint's Statutory Basis for Jurisdiction**

Plaintiffs allege that Defendants have committed violations of Section I of the Sherman Act, 15 U.S.C. § 1, violations of various antitrust and consumer fraud statutes of certain states and the District of Columbia, and violations of state equity law doctrines. Id., ¶ 2. Plaintiffs assert that this Court has jurisdiction over the Sherman Act claims pursuant to 28 U.S.C. § 1331 and 1337 (a) and 15 U.S.C. § 15 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs allege that venue is proper within this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391 (b) and (c).

### E.   **The Present Motions**

Defendants Novartis AG and AstraZeneca PLC move to dismiss the Consolidated Complaint based on lack of personal jurisdiction and improper venue. Novartis AG and AstraZeneca PLC both represent that they are holding companies that do not manufacture, market, or sell prescription drugs in Minnesota or the United States.  Declaration of George L. Miller ("Miller Decl."), ¶ 3; Affidavit of Adrian Charles Noel Kemp ("Kemp Aff."), ¶ 4. Both Novartis AG and AstraZeneca PLC have submitted evidence by affidavit in support of their motions.

### E.   AstraZeneca PLC Evidence Submitted by Affidavit

AstraZeneca PLC has submitted by affidavit evidence that it does not own or rent real property, has no bank account, phone number, or mailing address, and has no contracts in Minnesota.  Kemp Aff., ¶ 6.  Similarly, it represents that AstraZeneca PLC has not registered as a foreign corporation to do business in Minnesota and has no agent in Minnesota for service of process. Id., ¶ 6.  AstraZeneca PLC does not have an office or employees in Minnesota. Id., ¶¶ 6, 8.  AstraZeneca PLC acknowledges that it has an indirectly owned U.S. subsidiary, AstraZeneca LP ("AZLP"), which does business in Minnesota, but AstraZeneca PLC represents that it and AZLP are separate corporate entities and that AstraZeneca PLC does not intervene in the decisions of AZLP. Id., ¶ 9.  AstraZeneca PLC and AZLP share one common officer - David Brennan is President and Chief executive Officer of AstraZeneca LP and serves as Executive Vice President, North America.  Id. at ¶7. AstraZeneca emphasizes that the Complaint alleges no facts to support an inference that AstraZeneca exercised any control over AZLP with respect to the manufacture, sale, marketing, or distribution of drugs in Minnesota or the United States.

In opposition to the motion, Plaintiffs have submitted public information showing that AstraZeneca PLC has an office in Wilmington, Delaware.  In re: Tamoxifen Citrate Antitrust Litigation, 262 F.Supp.2d 17, 20

(E.D.N.Y. 2003); Affidavit of Daniel E. Gustafson ("Gustafson Aff."), Exh. H.

AstraZeneca PLC has twenty business entities located throughout the United

States and its territories.  Gustafson Aff., Exh. S.  AstraZeneca PLC releases

financial reports which detail United States sales and expectations and direct

media and investor inquiries to various contacts in the United States.  See, e.g.,

Gustafson Aff., Exhs. P, Q.

AstraZeneca PLC has registered trademarks in the United States,

and  AstraZeneca International's website identifies one of its key strategies is

to "Win in the U.S.", stating "Special focus is being given to the future growth of

the U.S. business as a critical, integrated part of our global organisation."

Gustafson Aff., Exh. M. AstraZeneca PLC's 2003 Annual Report states that it

has $8.7 billion of sales in the United States, making it the fifth largest

pharmaceutical company in the United States.  Gustafson Aff., Exh. L at 21.

### F.   <u>**Novartis AG Evidence Submitted by Affidavit**</u>

Novartis AG similarly has submitted by affidavit evidence that

Novartis AG does not own, use, or possess any property in Minnesota or

transact business within Minnesota.  Miller Decl., ¶¶ 6,8.  Novartis AG

represents that it has no offices, employees, agents, phone listings or bank

accounts in Minnesota.  Id., ¶ 7.  Novartis AG is not registered to do business

in Minnesota.  Id., ¶ 4.

Plaintiffs emphasize that Novartis AG has subsidiaries with contacts in Minnesota and the United States. Plaintiffs offer publicly filed documents in which Novartis AG and its subsidiary Novartis Pharmaceuticals refer to their businesses in the collective; for example, a recently filed prospectus directs investors in Novartis AG to "our website," listed as www.us.novartis.com.  See, e.g., Gustafson Aff., Exh. R at 3.  Plaintiffs submit evidence that Novartis AG's subsidiary, Novartis Pharmaceuticals, employs medical representatives in Minnesota and is licensed to do business in Minnesota. Gustafson Aff., Exhs. D, G. Novartis Pharmaceuticals is responsible for over 60% of total sales of Novartis AG.  Id., Exh. A at 16.

Novartis AG has registered over three hundred U.S. patents and over eight hundred U.S. trademarks.  In re: Phenylpropanolamine Product Liability Litigation, 344 F.Supp.2d 686, 694 (W.D. Wash. 2003).  It has been a party to fourteen different patent cases in United States federal courts, including cases in which it was a plaintiff.  Gustafson Aff., Exh. B.  Novartis AG has registered securities with the Securities and Exchange Commission; its American Depository Shares trade on the New York Stock Exchange. Gustafson Aff., Exh A at 139.

**ANALYSIS**

    **A.**    **<u>Motion to Dismiss Standard</u>**

To survive a motion to dismiss for lack of personal jurisdiction, the nonmoving party must only make a prima facie showing of personal jurisdiction.  <u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted); <u>Elecs. for Imaging, Inc. v. Coyle</u>, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citations omitted).  Additionally, on a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the facts must be viewed in the light most favorable to the nonmoving party.  <u>Id.</u>; <u>Mountaire Feeds, Inc. v. Agro Impex, S.A.</u>, 677 F.2d 651, 653 (8th Cir. 1982) (citations omitted).

**B.    <u>Plaintiffs' Sherman Act Claim</u>**

Plaintiffs ask this Court to confer venue under the Alien Venue Act (28 U.S.C. § 1391 (d)) and Section 12 of the Clayton Act (15 U.S.C. § 22), and to find personal jurisdiction pursuant to Section 12 of the Clayton Act on their federal antitrust claims.  If this Court determines that the Clayton Act confers personal jurisdiction over these Defendants, it must still consider whether constitutional Due Process considerations are satisfied.  <u>See</u>, <u>e.g.</u>, <u>International Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945).  Due Process is adequate where a nonresident has sufficient "minimum contacts" with the forum so that personal jurisdiction is consistent with "traditional notions of fair play and substantial justice."  <u>International Shoe Co.</u>, 326 U.S. at 316 (citations omitted).  When a

forum seeks to assert personal jurisdiction over a nonresident defendant, the

defendant has "fair warning" of suit in the forum if the defendant has

"purposefully directed his activities at residents of the forum." <u>Burger King</u>

<u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (citation omitted).  The contacts

between the nonresident defendant and the forum must be such that the

defendant should "reasonably anticipate being haled into court there." <u>World-</u>

<u>Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

### 1.     Venue Under the Alien Venue Act

In their Complaint, Plaintiffs pled that venue is appropriate under

28 U.S.C. § 1391 (b) and (c).  Plaintiffs now ask the Court to instead apply 28

U.S.C. § 1391 (d), the Alien Venue Act, which provides that "[a]n alien may be

sued in any district." 28 U.S.C. § 1391 (d).

The Alien Venue Act "derives from a tradition 'going back to the

beginning of the republic' under which 'suits against aliens were left

unrestricted,  and could be tried in any district, subject only to the

requirement of service of process.'" <u>In re: Auto Refinishing Paint Antitrust</u>

<u>Litigation</u>, 358 F.3d. 288, 296 (3rd Cir. 2004) (citing <u>Brunette Machine Works,</u>

<u>Ltd., v. Kockum Industries, Inc.</u>, 406 U.S. 706, 708 (1972)).  The United States

Supreme Court in <u>Brunette Machine Works</u> held that the special patent venue

statute in issue in that case, which was narrower than the Alien Venue Act,

could not be used to shield an alien corporation from suit in the District of

Oregon. 406 U.S. at 714. In addressing the effect of the Alien Venue Act on

other statutory venue provisions, the United States Supreme Court found that

"Section 1391(d) is properly regarded, not as a venue restriction at all, but

rather as a declaration of the long-established rule that suits against aliens are

wholly outside the operation of all the federal venue laws, general and special."

<u>Brunette Machine Works, Ltd.</u>, 406 U.S. at 714.

Defendants contend that Plaintiffs cannot assert venue under 28

U.S.C. § 1391 (d), as they have not pled venue under that provision.

Nevertheless,  the failure to plead a special venue statute is not fatal to a

complaint. <u>See</u> <u>Catholic Order of Foresters v. US Bancorp Piper Jaffray, Inc.</u>,

337 F.Supp.2d 1148, 1158 (N.D. Iowa 2004).  Plaintiffs' pleading defect here is

one that would be easily cured with no changes to their factual allegations.

Defendants do not contest that they are in fact alien corporations who would

be subject to the Alien Venue Act.  Accordingly, this Court finds that the

Defendants suffer no prejudice by finding venue pursuant to the Alien Venue

Act.

**2.    Personal Jurisdiction Under the Clayton Act**

**a.    *Competing Interpretations of Section 12***

Section 12 of the Clayton Act sets for the framework for the

personal jurisdiction analysis in antitrust cases. In relevant part, the statute

provides: "any suit, action, or proceeding under the antitrust laws against a

corporation may be brought not only in the judicial district whereof it is an

inhabitant, but also in any district wherein it may be found or transacts

business; and all process in such cases may be served in the district of which it

is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. Courts have

interpreted the first clause of Section 12 to relate to venue and the second

clause, after the semi-colon, to relate to service of process "and, therefore,

personal jurisdiction." In re: Automotive Refinishing Paint Antitrust Litigation,

358 F.3d at 293.  The parties disagree on how these two clauses of Section 12

should be read, and there is a circuit split on the same issue. Compare In re:

Automotive Refinishing Paint Antitrust Litigation, 358 F.3d at 294 and Go-

Video, Inc., v. Akai Electric Co., Ltd., 885 F.2d 1406, 1414-15 (9th Cir. 1989)

with GTE New Media Services, Inc., v. Bell South Corp., 199 F.3d 1343, 1351

(D.C. Cir. 2000).

Defendants urge the Court to read Section 12 such that the

second clause is not effective unless the first clause's venue requirement is first

met. "The clause before the semi-colon relates to a supplemental basis for

venue and actions under the Clayton Act; the clause after the semi-colon

relates to nationwide service of process in antitrust cases; and invocation of the

12

nationwide service clause rests on satisfying the venue provision." GTE New Media Services, Inc., 199 F.3d at 1350. Defendants contend that, because Plaintiffs have not pled or shown that Novartis AG or AstraZeneca PLC transact business or can be found in this judicial district, this Court has no personal jurisdiction over them pursuant to the second clause of Section 12. Defendants' interpretation of Section 12 has been adopted by the United States Court of Appeals, District of Columbia Circuit. See, e.g., GTE New Media Services, Inc., 199 F.3d 1343; In re: Vitamins Antitrust Litigation, MDL No. 1285, 2002 U.S. Dist. LEXIS 25797, at *23 (D.D.C. April 24, 2002).

Plaintiffs ask the Court to interpret Section 12 so that the jurisdiction provision (the second clause) operates independently from the venue provision (the first clause). Using this interpretation, "Plaintiffs can rely on 28 U.S.C. § 1391(d) [the Alien Venue Statute] which provides for venue in antitrust actions against foreign corporations 'in any district' and on the second clause of Section 12 for personal jurisdiction over Defendants based on a minimum contacts analysis considering their contacts with the United States as a whole." In re: Automotive Refinishing Paint Antitrust Litigation, 358 F.3d at 293 (brackets in original, internal quotations omitted).

To this Court's knowledge, the Ninth Circuit Court of Appeals was the first federal appellate court to squarely address the competing

interpretations of Section 12.  Go-Video, Inc., 885 F.2d 1406.  In Go-Video, the

court conducted an extensive review of legislative history, Supreme Court

precedent, and legal commentary before concluding that Section 12 should not

be read to restrict venue and jurisdiction.  885 F.2d at 1410-14.  It noted

instead that "courts have viewed [Section 12's] main contribution to be its

expansion of the bounds of venue." Id. at 1410.  The Ninth Circuit interpreted

Section 12 so that "process may be served on an antitrust defendant pursuant

to [Section 12] in cases where venue is not established under that section but

lies properly under 28 U.S.C. § 1391(d)."  Id. at 1413.

        The Ninth Circuit's interpretation of Section 12 has been adopted

by the Third Circuit and the majority of courts which have since considered the

question.  See, e.g., In re: Automotive Refinishing Paint Antitrust Litigation,

358 F.3d at 294; Paper Systems, Inc. v. Mitsubishi Corp., 967 F.Supp. 364, 358

(E.D. Wis. 1997) ("In the case of the antitrust laws, it makes no sense to tie a

district court's jurisdiction to the state in which it sits; it neither promotes the

enforcement of the antitrust laws nor the management of litigation."); Daniel v.

American Board of Emergency Medicine, 988 F.Supp. 127, 143-44 (W.D.N.Y.

1997); Icon Industrial Controls Corp. v. Cimetrix, Inc., 921 F.Supp. 375, 380-82

(W.D.La. 1996); General Electric Co., v. Bucyrus-Erie Co., 550 F.Supp. 1037,

1040 (S.D.N.Y. 1987); In re: Isostatic Graphite Antitrust Litigation, 2002 WL

31421920, *2-3 (E.D. Pa. 2002). It appears that the Fifth Circuit also approves of a venue-expanding approach to interpreting Section 12, as it cited the Ninth Circuit's <u>Go-Video</u> case with approval in determining "[w]hen jurisdiction is invoked under the Clayton Act, the court examines the Defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met." <u>Access Telecomm, Inc., v. MCI Telecommunications Corp.</u>, 197 F.3d 694, 718 (5th Cir. 1999) (citing <u>Go-Video, Inc.</u>, 885 F.2d 1406).

Defendants contend that the District of Minnesota has rejected the venue-expanding interpretation of Section 12 displayed in <u>Go-Video</u> and its progeny. Defendants cite <u>I.S. Joseph Co., Inc., v. Mannesmann Pipe and Steel Corp.</u>, 408 F.Supp. 1023 (D.Minn. 1976) and <u>State of West Virginia v. Morton International, Inc.</u>, 264 F.Supp. 689 (D.Minn. 1967) to argue that Plaintiffs' interpretation of Section 12 has already been rejected by the District of Minnesota.

In <u>State of West Virginia</u>, the plaintiff urged the court to find venue for a defendant who had never been in the district, arguing that the transaction of business in the district by one co-conspirator sustained venue against the other co-conspirators. 264 F.Supp. at 691-92. The court rejected this "co-conspirator" theory and found that venue was inappropriate. <u>Id.</u> at 695-

15

96.

The court faced a similar question in <u>I.S. Joseph Co.</u>, in considering whether Section 12 of the Clayton Act allowed extraterritorial service of process on a West German corporation that had no demonstrated contacts with Minnesota. 408 F.Supp. at 1024. There, plaintiff I.S. Joseph argued that the West German company conspired with another Defendant sufficient to meet the Section 12 test of transacting business in Minnesota. <u>Id.</u> The court again rejected this "co-conspirator" theory as a method of establishing a defendant's contacts with the jurisdiction. <u>Id.</u> The court then found "because the venue provisions of Section 12 have not been met – MAG is not an inhabitant of this district, it is not found here and it does not transact business here – extraterritorial service of process is not authorized by it." <u>Id.</u> at 1025.

This Court is unpersuaded by the limited reasoning and circumstances presented by <u>I.S. Joseph Co.</u> and <u>State of West Virginia</u>. The focus of these cases is the court's express rejection of a theory of venue and jurisdiction not needed here, as Plaintiffs' jurisdictional arguments do not rely exclusively on the "co-conspirator theory." Neither case squarely addresses the issue before this Court - whether Plaintiffs can rely on the Alien Venue Act for venue and on the second clause of Section 12 for personal jurisdiction. Both

cases are well over 25 years old and do not reflect more recent developments in both global business and the law.  The latest of the cases, <u>I.S. Joseph</u>, pre-dates <u>Go-Video</u> by over a decade, and it is the Court's understanding that the issue has not been addressed in the district since.  While the cases stand as good law, this Court finds their considerations too narrow to be useful to the analysis here.

This Court further finds that another case heavily relied upon by Defendants, <u>GTE New Media Services</u>, is distinguishable under the facts before it.  The <u>GTE New Media Services</u> court interprets Section 12 of the Clayton Act in the fashion that Defendants here urge - finding the second,  jurisdictional clause of Section 12 dependent upon the first, venue clause.  199 F.3d at 1351.  In <u>GTE New Media Services</u>, however, the defendants were domestic corporations, and the Alien Venue Act did not apply.  The same distinction was noted by the court in <u>In re: Isostatic Graphite Antitrust Litigation</u>: "In <u>Go-Video</u>, the operative general venue statute is the Alien Venue provision of 28 U.S.C. § 1391 (d)… . This was not the case in <u>GTE</u>, where the defendants were American corporations. It is unlikely that Congress intended aliens to be made more difficult to sue when it drafted Section 12 of the Clayton Act, and therefore, at least on these facts, a national contacts test is appropriate." <u>In re: Isostatic Graphite Antitrust Litigation</u>, 2002 WL 31421920 at *2.

17

In reviewing the circuit split regarding interpretation of Section 12 of the Clayton Act, this Court is persuaded that the better reasoning is found in the Ninth and Third Circuits' determinations in <u>Go-Video</u>, <u>In re: Automotive Refinishing Paint Antitrust Litigation</u>, and their progeny. Indeed, in interpreting Section 12, this Court finds nothing in legislative history or the law to support the notion that Congress intended aliens to be made *more* difficult to sue in antitrust cases than in other cases. As such, the jurisdictional provisions of Section 12 of the Clayton Act should be read independent of the first, venue clause. In cases such as this, where venue is ordinarily found against foreign defendants under the Alien Venue Act, it is appropriate to find venue under the Alien Venue Act and apply the second, world-wide service of process clause of Section 12 to find jurisdiction.

### b.   *Due Process Analysis*

The Court must now turn to the questions of whether AstraZeneca PLC and Novartis AG have sufficient contacts with the United States as a whole such that federal jurisdiction over them does not offend "traditional notions of fair play and substantial justice." <u>International Shoe Co.</u>, 326 U.S. at 316. Based upon review of the publicly-available facts submitted in opposition to the Motions to Dismiss, this Court finds that AstraZeneca PLC and Novartis AG have sufficient contacts with the United States by which this Court can

exercise personal jurisdiction over them for Plaintiffs' federal antitrust claims.

While AstraZeneca PLC's and Novartis AG's public statements describe the activities of themselves and their subsidiaries in the collective (e.g., "we" or "us"), making it difficult to distinguish between the various entities, this Court finds that both Defendants have demonstrated that they have "purposefully directed" enough activities toward the United States to reasonably anticipate being haled into court here. AstraZeneca PLC directs potential investors and media inquiries to offices in Delaware. Novartis AG has registered securities with the Securities and Exchange Commission. Both Novartis AG and AstraZeneca PLC have registered intellectual property in the United States, and Novartis AG has filed lawsuits in the United States to protect its pharmaceutical patents. By taking advantage of United States intellectual property laws, both entities have "purposely availed themselves" of utilizing the laws of the United States. Public documents reveal that both AstraZeneca PLC and Novartis AG represent that they are actively growing their pharmaceutical businesses in the United States. In so doing, the moving Defendants should not be surprised at being sued in the United States for activities relating to their pharmaceutical businesses. This Court finds that traditional notions of fair play and substantial justice are not offended by the federal court's jurisdiction over AstraZeneca PLC and Novartis AG on Plaintiffs'

federal antitrust claims.   Accordingly, AstraZeneca PLC's and Novartis AG's

motions to dismiss Plaintiffs' Sherman Act claims should be denied.

C.     **<u>Plaintiffs' State Claims</u>**

Plaintiffs have also asserted state law claims arising out of the

common nucleus of facts which support their federal law claims.  This Court

would ordinarily have pendent jurisdiction over Plaintiffs' state law claims as a

result. However, because this Court, by Report and Recommendation dated

February 28, 2005, has recommended dismissal of Plaintiffs' federal claims, it

is necessary to separately address whether this Court has independent

jurisdiction over Novartis AG and AstraZeneca PLC for Plaintiffs' state law

claims.

A court must first examine whether personal jurisdiction is proper

under the forum state's long-arm statute.  <u>See</u> <u>Wessels, Arnold and Henderson</u>

<u>v. National Medical Waste</u>, 65 F.3d 1427, 1431 (8th Cir. 1995).  If the state

statutory requirements are met, a court then addresses whether exercising

personal jurisdiction comports with due process.  <u>Id.</u>  Minnesota's long-arm

statutes "extend jurisdiction to the maximum limit consistent with due

process." <u>Id.</u>

As noted in the analysis of the federal claims, above, due process is

adequate where a nonresident has sufficient "minimum contacts" with the

forum state so that personal jurisdiction is consistent with "traditional notions

of fair play and substantial justice."  International Shoe Co. v. Wash., 326 U.S.

at 316 (citation omitted).  The Eighth Circuit employs a five-factor test to

determine whether a defendant has adequate contacts with Minnesota to

justify personal jurisdiction:  (1) quantity of the contacts with the forum state;

(2) nature and quality of the contacts; (3) relationship between the cause of

action and the contacts; (4) the state's interest in providing a forum for the

litigation; and (5) convenience of the parties.  Digi-Tel Holdings, Inc. v. Proteq

Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).  The first three factors are

given primary consideration, while the last two are considered secondary.  See

Aftanase v. Econ. Baler Co., 343 F.2d 187, 197 (8th Cir. 1965).

Defendants Novartis AG and AstraZeneca PLC move to dismiss the

state claims against them, arguing that Plaintiffs can show no contacts between

them and the State of Minnesota.  Plaintiffs seem to acknowledge the lack of

contacts between Minnesota and Novartis AG and AstraZeneca PLC, as they

urge the Court to find that these Defendants are acting in Minnesota by virtue

of their subsidiaries.  Plaintiffs emphasize that Novartis AG's subsidiary,

Novartis Pharmaceuticals, is licensed in Minnesota and employs medical

representatives in Minnesota. Plaintiffs similarly point out that AstraZeneca

PLC's American subsidiaries conduct business within Minnesota and that

21

AstraZeneca Pharmaceuticals LP is licensed to do business in Minnesota. As such, Plaintiffs conclude that these subsidiaries are acting as their parent company's agents sufficient to find jurisdiction over the parents.  In support of its agency theory, Plaintiffs offer recent findings from other courts in which the actions of the subsidiaries of these Defendants were found to be sufficient contacts with the fora to establish jurisdiction over these Defendants. See In re: Phenylpropanolamine Products Liability Litigation, 344 F.Supp.2d 686 (W.D. Wash. 2003) (Court concluded that Novartis AG exercised extensive control over subsidiary Novartis Pharmaceuticals, such that the actions of Novartis Pharmaceuticals in the State of Washington were sufficient to grant the court jurisdiction over Novartis AG); In re: Tamoxifen Citrate Antitrust Litigation, 262 F.Supp. 2d 17, 24 (E.D.N.Y. 2003) (Court found that AstraZeneca PLC had a U.S. headquarters and "openly claims to seek the advantages of the United States market.")

Based on the record before it and the law, this Court finds that Plaintiffs cannot show sufficient contacts by Novartis AG and AstraZeneca PLC with the State of Minnesota to support an independent finding of personal jurisdiction over them on Plaintiffs' state law claims. Plaintiffs have not pled or proven that Novartis AG and AstraZeneca PLC have purposefully directed activities to Minnesota residents or that they have purposefully availed

themselves of the protection and benefits of Minnesota law.  While it is clear

that they have subsidiaries who have directed their activities to residents of

Minnesota, Plaintiffs have not shown that these Minnesota activities were

controlled by the parent organizations sufficient to satisfy what this Court

believes to be traditional notions of fair play and substantial justice.  Moreover,

the facts on which Plaintiffs' claims are based have nothing to do with the State

of Minnesota, and the Complaint does not identify a single activity by any

Defendant directed at Minnesota or its residents.  Under these circumstances,

this Court is particularly reluctant to find personal jurisdiction exists over

Novartis AG and AstraZeneca PLC on an agency theory.  Accordingly, this

Court finds that the extension of personal jurisdiction over AstraZeneca PLC

and Novartis AG for Plaintiffs' state law claims, independent of the federal

claims, would be inappropriate.  The Motions to Dismiss Plaintiffs' state claims,

if considered independent of the federal claims, should be granted.


Based upon the foregoing, and all the files, records, and

proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Novartis

AG's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (Doc. No.

92) and Defendant AstraZeneca PLC's Motion to Dismiss for Lack of

Jurisdiction and Improper Venue (Doc. No. 99) should be **GRANTED IN PART**

and **DENIED IN PART** as set forth above.   Counts II and III of Plaintiffs'

Consolidated Complaint should be dismissed against Defendant Novartis AG

and Defendant

AstraZeneca PLC.


Dated: March 18, 2005                     s/Jonathan Lebedoff
                                         _____
                                         JONATHAN LEBEDOFF
                                         Chief United States Magistrate Judge


Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties by April 6, 2005, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.